IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL NO. H-09-424-3 |
| | § | |
| HOWARD GRANT | § | (Civil Action No. H-12-2344) |

# **MEMORANDUM AND ORDER**

This criminal prosecution is before the Court on Defendant Howard Grant's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 ("§ 2255 Motion") [Doc. # 1077]. Grant asserts that his due process rights were violated when the United States presented perjured testimony during his trial. The United States filed a Motion to Dismiss [Doc. # 1082], and Grant filed a Reply [Doc. # 1089] and a Supplement [Doc. # 1090] in support of his § 2255 Motion.

The Court has carefully reviewed all pertinent matters in this criminal case. Additionally, the Court has a clear recollection of the criminal proceedings in this case, including Grant's testimony at trial. Based on its review of the record, its recollection of the case, and the application of governing legal authorities, the Court **denies** Grant's § 2255 Motion, **grants** the Government's Motion to Dismiss, and **dismisses** the corresponding civil action (No. H-12-2344) for reasons set forth below.

## I.  BACKGROUND

Grant is a physician.  Grant's co-conspirator, Doris Vinitski, operated a Houston company called Onward Medical Supply ("Onward").  Javonica Moten, a principal witness for the United States at Grant's trial, worked for Onward as an administrative assistant from August 2008 through January 2009.  Defendant Clinton Lee was Moten's boyfriend and a friend of Grant.

Between 2003 and 2009, Onward fraudulently billed Medicare for durable medical equipment ("DME") that was sold to patients for whom the equipment was not medically necessary.  *See United States v. Grant*, 683 F.3d 639, 641 (5th Cir. 2012).[1]  In order to submit a claim for reimbursement from Medicare for the DME, Onward needed a certificate of medical necessity and a prescription, both signed by a physician.  *Id.*  In late 2008, co-conspirator John Nasky Okonkwo provided Onward with forged prescriptions for DME.  Okonkwo had purchased the prescriptions, already signed with Grant's name, from Dr. Joseph Edem.  Okonkwo paid Edem $500.00 per motorized wheelchair prescription and $300.00 per signed prescription for orthotics.  *Id.*

---

[1]  The Court cites to the opinion of the United States Court of Appeals for the Fifth Circuit for ease of reference.  The Court of Appeals' summary is an accurate report of the evidence at trial.

The first set of prescriptions signed with Grant's name was delivered from Okonkwo to Onward in late September or early October 2008. *Id.* Moten, who had seen Grant's signature before, advised Vinitski that the signature on the prescriptions from Okonkwo did not appear to be Grant's. *Id.* at 642. Grant later met with Vinitski and confirmed that it was not his signature on the prescriptions from Okonkwo. Shortly thereafter, Grant and Vinitski met for dinner at Kona Grill (a Houston restaurant), at which point Grant asked Vinitski for money "to redo the prescription order and sign it with his signature." *Id.* Moten testified at trial that Vinitski told her that Grant "was asking for money to make those patients right." A second set of prescriptions with Grant's forged signature was delivered to Onward from Okonkwo several weeks after the first set. At Vinitski's direction, Moten prepared for Grant a list of patients in both sets of prescriptions. *Id.*

Grant was charged by Indictment with conspiracy to engage in Medicare fraud. Grant was also charged with one count of Medicare fraud involving delivery of a $6,000.00 motorized wheelchair and one count of Medicare fraud involving delivery of a $500.00 knee orthosis, each to a Medicare patient who clearly did not need the equipment. Following a trial by jury, at which Grant testified on his own behalf, the jury returned a unanimous verdict finding Grant guilty of the crimes charged in the Indictment. Grant was sentenced to a term of imprisonment of 41 months, followed

by a term of supervised release of three years.  The Court imposed $121,742,62 in restitution and a mandatory special assessment of $300.00.

Grant filed a timely Notice of Appeal.  The Fifth Court affirmed Grant's conviction and sentence, concluding specifically that there was adequate proof to support Grant's conviction.  *See United States v. Grant*, 683 F.3d 639 (5th Cir. 2012).  Grant did not file a petition for a writ of certiorari to the United States Supreme Court and, therefore, his conviction is final.

Grant filed a timely § 2255 Motion asserting that his right to due process was violated during trial when the Government presented perjured testimony from Javonica Moten. Specifically, Moten testified regarding a meeting at Kona Grill between Grant and co-conspirator Doris Vinitski.  Moten stated that she was at the restaurant that same night because she was "with my sister and her co-workers for her birthday."  Grant argues this testimony was perjured because Moten's sister Janaye Moten was born on March 11, not in late November or early December.  Grant argues also that the telephone records admitted into evidence do not support Moten's testimony.  The § 2255 Motion has been fully briefed and is ripe for decision.

## II.     STANDARD FOR § 2255 RELIEF

To obtain collateral relief under 28 U.S.C. § 2255, a defendant "must clear a significantly higher hurdle" than the standard that would exist on direct appeal. *United*

*States v. Frady*, 456 U.S. 152, 166 (1982). "Following a conviction and exhaustion or waiver of the right to direct appeal, [courts] presume a defendant stands fairly and finally convicted." *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998). "As a result, review of convictions under [§] 2255 ordinarily is limited to questions of constitutional or jurisdictional magnitude, which may not be raised for the first time on collateral review without a showing of cause and prejudice." *Frady*, 456 U.S. at 166.[2]

## III.  ANALYSIS

Grant argues that his due process rights were violated by the Government's presentation of Moten's testimony regarding the meeting at Kona Grill between Grant and Vinitski in late November or early December. Specifically, Grant asserts that Moten's statement that she was at Kona Grill when Grant and Vinitski were meeting because she went "with [her] sister and her co-workers for her birthday" was false. Grant notes that Janaye Moten's birthday is in March, not in November or December. Grant argues also that the telephone records admitted into evidence do not show

---

[2] Grant asserted a prosecutorial misconduct claim on appeal. *See United States v. Grant*, 683 F.3d 639, 649 (5th Cir. 2012). The claim on appeal did not relate to the allegedly perjured testimony by Moten and, therefore, is procedurally barred unless Grant can demonstrate cause and prejudice for his failure to assert the claim. The prejudice prong of the procedural bar analysis and the materiality element of the prosecutorial misconduct claim are "coterminous." *U.S. v. Alanis*, 88 F. App'x 15, 22 (5th Cir. Feb. 10, 2004). As a result, the Court will address the merits of the prosecutorial misconduct claim.

telephone conversations between him and Vinitski between his first visit to Onward in October 2008 and December 3, 2008.³ Therefore, according to Grant, he could not have scheduled a dinner meeting with Vinitski for late November or early December 2008.

"Due process is violated when the prosecution knowingly offers false testimony to obtain a conviction and fails to correct such testimony." *See United States v. Alanis*, 88 F. App'x 15, 22 (5th Cir. Feb. 10, 2004) (citing *Tucker v. Johnson*, 242 F.3d 617, 625-26 (5th Cir. 2001); *Burton v. United States,* 237 F.3d 490, 493 (5th Cir. 2000)).  To obtain § 2255 relief based on prosecutorial misconduct in the presentation of perjured testimony, Grant must prove "(1) that the statements in question are false; (2) that the government knew of their falsity; and (3) that the statements were material." *See id.* (citing *Tucker,* 242 F.3d at 626).

With reference to the first element, the record does not support Grant's position that the testimony was false.  There is no evidence that Janaye Moten is Javonica Moten's only sister.  Moten's pertinent testimony is replete with the pronoun "her," making it unclear whether the celebration at Kona Grill was for Moten's sister or one of her co-workers.  Regarding Grant's contention about the absence of identified telephone conversations during the relevant time period, the lack of entries in cell

---

³ The telephone records reflect a telephone call from Vinitski to Grant at 4:52 p.m. on December 3, 2008.

phone records does not establish that Vinitski and Grant did not plan the meeting at Kona Grill either in person, through a third party such as co-conspirator Clinton Lee, or on a land-line or another unidentified telephone.[4] Alternatively, the statement may have been an innocent misrecollection regarding why Moten was at Kona Grill on the night in question. The record fails to support Grant's assertion that Moten's testimony was false.[5]

Additionally, even if the testimony regarding Moten's reason for being at the restaurant during the meeting between Grant and Vinitski were false, Grant has failed to present evidence that the prosecutors knew Moten's testimony was false. There is no reason for the United States to know the birth date of Moten's sister. There is no

---

[4] At one point, Vinitski was attempting to devise a way to pay Grant indirectly for the forged prescriptions. Lee suggested to Moten that he could serve as a third party through whom Vinitski could make the payments to Grant. From this evidence, one could infer that Lee would also have been willing to act as an intermediary to arrange the dinner at Kona Grill for Grant and Vinitski.

[5] Grant argues also that Moten's testimony regarding the meeting at Kona Grill was clearly false because Vinitski did not introduce him to Moten and her companions. Grant contends: "Such an introduction would not only be a SOCIAL IMPERATIVE, but it would give the supposedly young female celebrants an opportunity to meet an older, established doctor to underwrite their expenses to a reasonable extent, which would be quite expensive for normal working girls in presumably secretarial positions. The fact that this window of opportunity was not exploited, helps lend credence to the theory of FABRICATION, according to the testimony." Grant's Reply [Doc. # 1089], p. 3 (capitalization in original). This argument is rank supposition. There is nothing to indicate that Moten's companions were poor secretaries who would allow an older man they did not know to pay their restaurant bill.

evidence that the United States knew before Moten testified that her sister's birthday was the purported reason for Moten's presence at Kona Grill on the night in question. Grant has presented nothing that indicates that the United States knowingly presented false testimony from Moten.

Even if Grant were able to show that Moten's testimony was false and that the Government knew it was false, the testimony was not material. Perjured testimony is material "if there is any *reasonable* likelihood that the false testimony could have affected the judgment of the jury." *Creel v. Johnson*, 162 F.3d 385, 391 (5th Cir. 1998); *accord*, *Alanis*, 88 F. App'x at 23. The reason for Moten's presence at Kona Grill on the same night Vinitski was meeting with Grant was not material and could not have affected the jury's verdict. Moreover, there is adequate evidence independent of Moten's testimony regarding the meeting at Kona Grill to support Grant's conviction. In addition to her testimony regarding the Grant/Vinitski meeting at Kona Grill, Moten testified that Vinitski told her that Grant was asking for money to make the prescriptions "right." That testimony was supported by Okonkwo's independent testimony that both Vinitski and Edem told him that Grant was demanding $10,000.00 from Vinitski for the forged prescriptions. The phone records, while not reflecting calls on identified telephones between Grant and Vinitski between early October and December 3, 2008, clearly reflect multiple telephone calls between

Grant and co-conspirator Clinton Lee, Grant's friend and Vinitski's employee during this time period. The telephone records also reflect multiple telephone calls between Vinitski and Grant beginning December 3, 2008, and continuing through March 31, 2009. This evidence provides an independent basis for the jury's verdict, negating any reasonable likelihood that Moten's testimony regarding why she was at Kona Grill at the same time Vinitski and Grant were meeting could have affected the jury's verdict.

Defendant's suspicions and conclusory allegations of prosecutorial misconduct are unsupported by the record and are insufficient to merit § 2255 relief. *See Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990); *United States v. Muyaba*, 2012 WL 4840682, *4 (N.D. Tex. May 30, 2012). Absent a showing that the testimony at issue was actually false, that the prosecutor knew it was false, and that the allegedly false testimony was material, Grant has failed to establish a constitutional violation. *See Tucker*, 242 F.2d at 626; *Caldwell v. Thaler*, 770 F. Supp. 2d 849, 863-64 (S.D. Tex. 2011).

## IV. <u>CERTIFICATE OF APPEALABILITY</u>

Any review of this Court's decision on Grant's post-judgment motion for relief from his conviction is governed by the Antiterrorism and Effective Death Penalty Act (the "AEDPA"), codified as amended at 28 U.S.C. § 2253(c). Therefore, a certificate

of appealability is required before an appeal may proceed. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *see also Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir. 1997) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability).

A certificate of appealability will not issue unless the movant makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a movant to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Under the controlling standard, a movant must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336. Where denial of relief is based on procedural grounds, the movant must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898

(5th Cir. 2000). After careful review of the record and the applicable law, the Court concludes that reasonable jurists would not find the assessment of Grant's constitutional claim debatable or wrong. Because Grant does not otherwise allege facts showing that his claim could be resolved in a different manner, a certificate of appealability will not issue in this case.

## V. CONCLUSION AND ORDER

Grant has failed to establish that the Government engaged in prosecutorial misconduct. As a result, he is not entitled to relief under 28 U.S.C. § 2255, and it is hereby

**ORDERED** that Grant's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 [Doc. # 1077] is **DENIED**, the Government's Motion to Dismiss [Doc. # 1082] is **GRANTED**, and the corresponding civil action (H-12-2344) is **DISMISSED**. It is further

**ORDERED** that a certificate of appealability is **DENIED**.

The Court will issue a separate Final Judgment.

SIGNED at Houston, Texas, this 27th day of **November, 2012**.

Nancy F. Atlas
United States District Judge